Raymond Howard PAYNE, Appellant

v.

The STATE of Texas, Appellee

NO. 14-15-00756-CR

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed September 8, 2016

Douglas M. Durham, Houston, TX, for Appellant.

Christopher Conrad, Houston, TX, for State.

## OPINION

Ken Wise, Justice

A jury found appellant, Raymond Howard Payne, guilty of the offense of murder. *See* Tex. Penal Code § 19.02. In one issue, appellant challenges the legal sufficiency of the evidence supporting his murder conviction. We affirm.

### FACTUAL BACKGROUND

At approximately 11:00 p.m. on May 27, 2014, appellant called 9-1-1, stating that his twenty-six-year-old son, Jarrod Payne, had shot himself inside appellant's home. When first responders arrived, they discovered Jarrod's body lying on the floor of his bedroom. Jarrod had a single gunshot wound in his chest. Appellant admitted that the gun lying next to Jarrod belonged to appellant.

In his recorded statement to police, appellant claimed that on the night of Jarrod's death, appellant was sleeping when he heard two loud noises that he first believed to be thunder. Appellant stated that after he realized the sounds were gunshots, he quickly went to Jarrod's room and found him lying on the floor. Appellant told the investigating officer that when he discovered Jarrod's weak pulse, he called 9-1-1 immediately.

At trial, the State presented evidence that contradicted appellant's version of events. Captain William Lummus of the Houston Fire Department testified that when he arrived at the scene, he felt that "[t]he whole scene wasn't adding up." According to Lummus, although it took only five or six minutes from the time of appellant's 9-1-1 call for the fire department to arrive, Jarrod's body was "unusually cold." Furthermore, contrary to appellant's state-

ment, Officer Mendez testified that appellant told Mendez more than once that it took him approximately thirty minutes to call 9-1-1. Moreover, Lummus stated that appellant was not "overly excited" or crying, and Mendez testified that appellant was outside smoking a cigarette and "acting normal" when Mendez arrived.

Lummus described the crime scene for the jury. He testified that Jarrod's bedroom door had a fresh hole "about chest high" with splintered wood. He also observed a gun lying underneath Jarrod's hand, which he believed was unusual and inconsistent with a typical suicide scene. While appellant stated that he had performed CPR on Jarrod before authorities arrived, Lummus testified that if CPR had been performed, appellant would have had blood on his hands and Jarrod's hand would have bounced off the gun.

Officers testified that in addition to the fatal round recovered from Jarrod's chest, they collected two rounds lodged in the wall directly opposite the bedroom door. A fourth round was discovered in the closet door of Jarrod's room. The investigator testified that based on the position of Jarrod's body and the location of the round near the ground, it appeared that this round "was fired through that closet door from around the position where Jarrod Payne's body ended up." He testified that Jarrod had an injury on his finger that "was consistent with a loosely held grip" of the weapon.

A Harris County firearms examiner testified that all four of the rounds collected had the same class characteristics as the gun recovered from the crime scene. Although four rounds were collected, the gun had only two empty casings, suggesting it had been reloaded. Next, a DPS firearms examiner testified regarding the results of a "muzzle-to-garment distance determination." He opined that based on the absence of residue patterns on Jarrod's shirt, it was possible that the fatal shot "was fired from a distance outside the range where repeatable gunshot residue patterns are formed ... [or] there was an intervening object or masking agent that prevented the visualization of the residue patterns."

Medical examiner Mary Anzalone, who performed Jarrod's autopsy, testified that she questioned the initial determination of suicide for several reasons. First, the location of the entrance wound was "atypical for an individual who self-inflicts a wound." Second, Anzalone found the lack of visible residue on Jarrod's shirt to be concerning, since such residue indicates a close range of fire. Third, she stated that the "short distance of travel within the body" was atypical, "given the type of weapon that was believed to have been used." Anzalone testified that this led her to believe that "perhaps the bullet had struck something before it struck [Jarrod], slowing down the velocity of the bullet, only enabling it to go about a half a foot within the body." Anzalone ultimately testified that she classified Jarrod's death as a homicide.

Following trial, the jury found appellant guilty of murder and, in response to a special issue, found that appellant used or exhibited a deadly weapon in the commission of the offense. The jury sentenced appellant to life in prison and ordered that he pay a $10,000 fine.

## ANALYSIS OF APPELLANT'S ISSUE

On appeal, appellant claims that the evidence is insufficient to support his murder conviction. Specifically, appellant argues that there is legally insufficient evidence establishing his intent to kill or cause serious bodily injury to Jarrod.

### Standard of Review

In determining whether the evidence is legally sufficient to support a

conviction, we view the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex.Crim.App.2010); *Gear v. State*, 340 S.W.3d 743, 746 (Tex.Crim.App. 2011). The jury is the sole judge of the weight and credibility of the evidence. *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim.App.2011); *see Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App.2010) (appellate court may not substitute its judgment for that of the fact finder). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim.App.2015).

### Sufficiency of the Evidence

A person commits the offense of murder if he (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act that is clearly dangerous to human life that causes the death of the individual. Tex. Penal Code § 19.02(b)(1)–(2). A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code § 6.03(a); *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex.Crim.App.2003) ("Murder is a 'result of conduct' offense, which means that the culpable mental state relates to the result of the conduct, i.e., the causing of the death.").

■ On appeal, appellant challenges only the sufficiency of the evidence that he acted intentionally. He does not challenge the jury's determination that he killed Jarrod. Proof of a mental state almost always depends upon circumstantial evidence. *Smith v. State*, 56 S.W.3d 739, 745 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd). A jury may infer intent from any facts that tend to prove its existence, including the acts, words, or conduct of the accused, and the method of committing the offense. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim.App.2004); *Hart v. State*, 89 S.W.3d 61, 64 (Tex.Crim.App.2002).

■ Here, the circumstantial evidence supporting appellant's conviction is strong. Appellant admitted that he and Jarrod were the only people present in the home at the time of the incident. At least one witness testified that appellant admitted to arguing with Jarrod on the night of his death. While appellant stated that he called 9-1-1 immediately, witness testimony and the temperature of Jarrod's body suggested otherwise. And although appellant claimed to have performed CPR on Jarrod, he did not have any blood on his hands and denied washing his hands.

Furthermore, multiple witnesses testified that based on their experience, the following facts did not support a suicide determination: (1) the location of the entrance wound; (2) the lack of residue surrounding the wound; and (3) the placement of the weapon under Jarrod's hand. Additionally, the fresh hole in the door and the wood fragments on the floor suggested recent damage, despite appellant's statement that the damage occurred before the night in question. Forensic testing revealed that the bullets could have been fired through an "intervening object," such as a door, and from a distance greater than eighteen inches. Finally, the forensic tests results presented at trial indicated that the bullets recovered could have been from the same class of gun that the appel-

lant owned and that was recovered from the scene.

Based on appellant's statements and behavior, the circumstantial evidence, and the location and nature of Jarrod's wounds, a reasonable jury could infer that appellant intended to kill or cause seriously bodily injury to Jarrod Payne. *See Guevara*, 152 S.W.3d at 50; *Hart*, 89 S.W.3d at 64. The jury could also infer intent from appellant's use of a deadly weapon. *See Arnold v. State*, 234 S.W.3d 664, 672 (Tex. App.–Houston [14th Dist.] 2007, no pet.) (quoting *Godsey v. State*, 719 S.W.2d 578, 581 (Tex.Crim.App.1986)) (stating that "when 'a deadly weapon is used in [a] deadly manner, the inference is almost conclusive that [the appellant] intended to kill . . . . ' ").

In support of his argument that the evidence is insufficient to determine that he acted intentionally, appellant relies solely on *Foster v. State*, 639 S.W.2d 691 (Tex.Crim.App.1982). In that case, the defendant shot and killed his girlfriend but denied having the intent to kill. 639 S.W.2d at 692–93. The Court of Criminal Appeals held that the evidence was insufficient to show that the defendant acted with the requisite intent because other evidence established that: (1) the defendant and his girlfriend had a loving relationship on the evening of the shooting; (2) the weapon used was defective and fired easily, even with the safety engaged; (3) the defendant promptly sought medical attention for his girlfriend and then notified authorities; (4) the defendant admitted handling the weapon when it discharged; and (5) the defendant was highly distraught after the shooting. *Id.* at 692–95.

The present case is entirely distinguishable from *Foster*. Here, appellant's ex-wife testified that he and Jarrod had a "bad" relationship and that at one point, appellant attempted to stab Jarrod. Further-

more, other testimony indicated that appellant and Jarrod argued on the day of the shooting. Unlike the weapon in *Foster*, experts testified that appellant's gun was functioning properly. Additionally, multiple first responders testified that Jarrod's body was "unusually cold," contradicting appellant's contention that he phoned for help immediately. Finally, appellant did not admit to handling the weapon, and several witnesses testified that appellant was not crying or otherwise emotional at the scene. For these reasons, we determine that *Foster* is not controlling. *See George v. State*, No. 14–99–00472–CR, 2000 WL 703140, at *4–5 (Tex.App.–Houston [14th Dist.] June 1, 2000, no pet.) (mem. op., not designated for publication) (noting that the case before the court "[stood] in stark contrast to *Foster*," given the violent nature of the murder, the defendant's failure to seek medical attention or call police, and the defendant's behavior following the murder).

Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could rationally infer that appellant acted with the intent to cause Jarrod's death or the intent to cause serious bodily injury to Jarrod. Accordingly, we hold that the evidence is sufficient to support the jury's verdict, and we overrule appellant's sole issue.

### CONCLUSION

We affirm the judgment of the trial court.