**Affirmed and Memorandum Opinion filed March 3, 2020.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-18-00874-CR

---

**AUSTIN WRAY WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 1457599**

## MEMORANDUM OPINION

Appellant Austin Wray Williams appeals his conviction for capital murder. A jury found appellant guilty, and the trial court sentenced him to life in prison. In two issues, appellant contends that the evidence is insufficient to prove that he (1) killed the complainant during the course of committing or attempting to commit robbery, and (2) intentionally caused the complainant's death. We affirm.

## Background

Appellant was charged with the capital murder of Noah Johannes, who died from a single gunshot wound to his back. Four eyewitnesses testified at trial: appellant, Eric Cole, Brandon Cottingham, and Haki Jones-LeBlanc. All four agreed that Johannes was shot while attempting to get out of appellant's car when a proposed sale of marijuana failed.

Cole testified that on the day in question, he, appellant, and Cottingham drove in appellant's car to purchase marijuana from Johannes. Cole was driving, appellant was in the front passenger seat, and Cottingham rode in the back seat. They picked up Johannes and Jones-LeBlanc. Johannes was in the middle of the back seat, and Jones-LeBlanc sat on the driver's side. Cole said that the plan was to buy one gram of marijuana for $10. He further explained that he, appellant and Cottingham had believed Johannes would have marijuana with him to sell, but when he got in the car, Johannes said that they would need to drive to his supplier's house to get it. During the five-minute drive to the supplier's house, an argument arose between appellant and Johannes over the fact Johannes did not already have the marijuana.

When they arrived, appellant asked Johannes if he could see the marijuana before giving Johannes the money, but Johannes insisted he would need the money first to get the marijuana. The argument escalated. According to Cole, by the end of the argument, Johannes was "screaming a little bit, too, because he kept repeating himself." Appellant pulled out a gun from his hoodie, pointed it toward the back, and "asked for everything." Appellant then took Johannes's and Jones-LeBlanc's backpacks and put them in the front floorboard. Jones-LeBlanc got out of the car and started running. Appellant then asked Johannes for his cell phone. Johannes said he did not have a phone, and then Cole heard a gunshot. Appellant

2

told Cole to drive and Cole did. As he drove away, Cole saw Johannes on the ground in the sideview mirror. Appellant then apologized to Cole and Cottingham for putting them in that situation. Appellant rifled through the backpacks and then threw them out of the car on the freeway. The next day, appellant told Cole that they needed to "get [their] story together."

Cottingham testified that at the time of trial, he was in jail on an aggravated robbery charge stemming from this incident. He stated that he was hoping to have the charge dismissed after his testimony. Cottingham explained that he had bought marijuana from Johannes a few times before and that they were planning to buy probably a gram apiece on this occasion. After Johannes and Jones-LeBlanc got in the car, they headed to another location to buy the marijuana. Cottingham said that Johannes had never taken him to a supplier's house before. During the drive, appellant and Johannes argued repeatedly over whether appellant would need to give Johannes money before Johannes got the marijuana from the supplier. Appellant was getting upset, and the argument got loud and somewhat heated. Johannes mentioned an ounce of marijuana, which would cost $200-250. That surprised Cottingham, who wanted just a gram.

When the car stopped at the supplier's house, appellant and Johannes were still arguing, but Cottingham said he was not paying much attention because he was on his phone and it was not his business. At some point, Cottingham looked up and saw appellant holding a gun and pointing it at Johannes. Appellant and Johannes then began "tussling back and forth for a backpack." Appellant said "[y]ou think I'm playing?" and ended up taking the backpack. When Jones-LeBlanc got out of the car and ran, Johannes slid over to the door but was shot upon exiting the car. Cottingham could not say whether appellant told Johannes to give him the backpack because he was not really paying attention. Cottingham and

3

Cole were telling appellant to "chill," trying to calm him down. Appellant was screaming and panicking and told them he was sorry. Appellant told them that the backpack contained "one gram" and a toothbrush, and he threw the backpack out of the car. Cottingham also stated that the backpack had remained in the backseat of the car because Johannes left it there when he got out. Cottingham did not see Johannes holding a weapon.

Appellant testified that he wanted to buy marijuana from his usual dealer, but the dealer was not answering the phone so Cole arranged for them to buy from Johannes. Johannes asked to be picked up and taken to his supplier's house, which was not a normal procedure and caused appellant some concern. According to appellant, Johannes demanded money and was being a bit aggressive. Appellant asserted that Cole had brought a gun into the car and put it under the front seat, possibly because appellant had told him he wanted to buy an ounce of marijuana. Appellant further became skeptical when Jones-LeBlanc gave different driving directions to Cole than appellant had received.

A discussion started during the drive to the supplier's house, and the argument continued after they stopped at the house. Appellant asserted that Jones-LeBlanc then began reaching for something in his backpack, so appellant decided to pull the gun and tell Johannes and Jones-LeBlanc to get out of the car because he no longer wanted to buy marijuana from them. Johannes was then trying to reach into his waistband. Appellant said that he told them twice "to get out and leave and drop everything." When Jones-LeBlanc got out of the car and ran, Johannes scooted over to get out as well but was "still trying to reach for something." Appellant was surprised Johannes was not leaving. Appellant figured Johannes probably had a weapon, so he fired the gun to scare him.

Appellant screamed and started crying, and they drove away. They drove

4

home and Cole then left with the gun. Appellant denied that he demanded anyone's backpack or phone or tried to rob anyone. He insisted that he thought he was about to get robbed and felt his life was in jeopardy. He acknowledged that he threw the backpacks out of the car because there was no need to have them in his possession, but he said that he never looked inside them. He further explained that he told Johannes and Jones-LeBlanc to leave the backpacks because he was afraid Johannes might have been reaching for a weapon in one of the backpacks. Appellant also suggested at one point that Johannes and Jones-LeBlanc just happened to leave the backpacks when they got out of the car. He agreed, however, that it was his fault Johannes got shot.

Jones-LeBlanc testified that he and Johannes were friends, but he did not know Johannes sold marijuana. On the night in question, he thought Johannes was just lining up a ride for them to a friend's house. When they headed to the friend's house, Jones-LeBlanc said he was not paying much attention. In fact, he said he did not hear anyone mention marijuana until the man in the front passenger seat pulled out a handgun about ten minutes into the trip. The man pointed the gun at Jones-LeBlanc and Johannes and told them to relinquish all of their possessions, but Jones-LeBlanc said he did not hand over his cell phone or wallet. The man with the gun took Jones-LeBlanc's and Johannes' backpacks. Jones-LeBlanc said his backpack contained a map of the University of Houston campus and maybe some class notes and pens or pencils. Johannes's backpack had a lot of Tupperware containers in it.

The man with the gun was acting in a threatening manner, so Jones-LeBlanc opened the back door, told Johannes to run, and then got out of the car and ran down the street. There was a gunshot, and Johannes fell to the ground as he was getting out of the car. Jones-LeBlanc subsequently gave a statement to police and

picked the shooter out of a photographic lineup. Jones-LeBlanc stated that Johannes had a knife in his left hand by his side during the robbery, but Jones-LeBlanc did not know if the knife was opened or closed. Johannes was asking "the robber" to stop, trying to "mediate." Jones-LeBlanc did not see Johannes point the knife at "the robber."

## *Discussion*

**Governing Law.** In reviewing sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational trier of fact could have found the challenged element or elements of the crime beyond a reasonable doubt. *See Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). Circumstantial evidence is as probative as direct evidence and can be sufficient alone to establish an accused's guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). In reviewing historical facts that support conflicting inferences, we presume that the jury resolved any conflicts in the State's favor and defer to that resolution. *Whatley*, 445 S.W.3d at 166. We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). As judge of the credibility of the witnesses, a jury may choose to believe all, some, or none of the testimony presented. *Cain v. State*, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997).

A person commits capital murder if he or she intentionally causes the death of an individual in the course of committing or attempting to commit certain felonies, including robbery. Tex. Penal Code § 19.03(a)(2). A person commits robbery if, in the course of committing theft and with intent to obtain or maintain

control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02(a). The phrase "in the course of committing theft" means "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1); *see also Riles v. State*, 595 S.W.2d 858, 862 (Tex. Crim. App. 1980). A person commits theft if the person unlawfully appropriates property with the intent to deprive the owner of the property. Tex. Penal Code. § 31.03(a).

The State must prove a nexus between the murder and the theft, *i.e.*, that the murder occurred to facilitate the taking of property. *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986). For a murder to qualify as capital murder, the intent to rob must be formed before or at the time of the murder. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). Proof of a completed theft is not required to establish the underlying offense of robbery; rather, a jury may infer the requisite intent from circumstantial evidence and from the defendant's conduct. *See Maldonado v. State*, 998 S.W.2d 239, 243 (Tex. Crim. App. 1999).

**Robbery.** In his first issue, appellant contends that the evidence is insufficient to prove that he killed the complainant during the course of committing or attempting to commit robbery. Appellant insists instead that the evidence demonstrates that he merely wanted to purchase marijuana, not rob anyone or take anyone's property. In support, appellant cites primarily his own testimony about his motives and the testimony of other eyewitnesses indicating that appellant did not keep any of the property that had been left in the car by Johannes and Jones-LeBlanc.

Appellant, however, ignores the substantial eyewitness testimony indicating he pointed a gun at Johannes and Jones-LeBlanc and took their property during the

7

same episode in which he also shot and killed Johannes. Appellant himself testified that he pulled out a gun and told Johannes and Jones-LeBlanc twice "to get out and leave and drop everything." Cole testified that appellant pulled out a gun from his hoodie, pointed it toward the back where Johannes and Jones-LeBlanc were sitting, and "asked for everything." Cole said that appellant then took the men's backpacks, put them in the front floorboard, and asked for Johannes's cell phone. Cottingham testified that appellant pointed a gun at Johannes and then physically took Johannes's backpack from him. And, Jones-LeBlanc testified that appellant told Johannes and Jones-LeBlanc to relinquish all of their possessions and then appellant took their backpacks. The jury, as trier of act, was free to believe this testimony over appellant's self-serving testimony regarding his intent. *See, e.g., Cain*, 958 S.W.2d at 407 n.5; *White v. State*, 412 S.W.3d 125, 129 (Tex. App.—Eastland 2013, no pet.).

From this evidence, the jury reasonably could have concluded that appellant intended to unlawfully appropriate Johannes's and Jones-LeBlanc's property with the intent to deprive them of the property. *See* Tex. Pen. Code. § 31.03(a). Moreover, this evidence supports the conclusion that appellant, with intent to obtain or maintain control of the property, intentionally threatened or placed Johannes and Jones-LeBlanc in fear of imminent bodily injury or death. *Id.* § 29.02(a); *see also Young v. State*, 283 S.W.3d 854, 862–63 (Tex. Crim. App. 2009). That appellant subsequently discarded the property does not negate the evidence indicating that he took the property from Johannes at gunpoint. Because the evidence supports the jury's conclusion that appellant committed robbery, we overrule appellant's first issue.

**Intentionally Caused Death.** In his second issue, appellant contends that the evidence is insufficient to prove that he intentionally caused Johannes's death.

8

Appellant insists that he only fired the gun to scare Johannes because appellant was concerned for his own safety and thought Johannes might be reaching for a weapon. Appellant points out that none of the eyewitnesses expressly testified that he intended to kill Johannes. Appellant additionally argues that if he had intended to kill Johannes, he would have fired more than once and there would have been other actions or words to indicate his intent.

A jury may infer a defendant's intent from any facts tending to prove its existence, including the method of committing the crime, the nature of the wounds inflicted on the victim, and the accused's acts, words, and conduct. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). Generally, a jury may infer an intent to kill from the use of a deadly weapon unless the manner of the weapon's use makes it reasonably apparent that death or serious bodily injury could not have resulted. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). "Naturally, the most obvious cases and the easiest ones in which to prove a specific intent to kill, are those cases in which a firearm was used and was fired or attempted to have been fired at a person." *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986); *see also Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993); *Payne v. State*, 502 S.W.3d 829, 833 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Appellant admitted at trial that he shot and killed Johannes and was responsible for his death. He asserted, however, that he did not intend to shoot Johannes but only intended "to scare [him] into getting out of the car" because he seemed to be reaching for something, perhaps a weapon, in the waistband of his pants. Once again, the jury was permitted to disbelieve appellant's self-serving testimony regarding his intent. *See, e.g., Cain*, 958 S.W.2d at 407 n.5; *White*, 412 S.W.3d at 129. Moreover, the jury reasonably could have inferred from appellant's shooting of Johannes at relatively close range in the back of his torso that appellant

9

intended to kill Johannes. *See Jones*, 944 S.W.2d at 647; *Godsey*, 719 S.W.2d at 581; *Payne*, 502 S.W.3d at 833. According to witnesses, the shooting occurred after a heated argument arose between the two men about a prospective drug deal. According to Cottingham, shortly before pulling the trigger, appellant said to Johannes, "You think I'm playing?" The jury reasonably could have deduced that appellant was angry with Johannes and wished to show that he was indeed not "playing" around.

That appellant may have had some concern for his safety does not negate the evidence of intent. The jury was instructed on the law of self-defense but rejected this defense in finding appellant guilty of capital murder. Both Cottingham and Jones-LeBlanc indicated that Johannes was trying to leave the car when he was shot, all of the witnesses confirmed that Johannes ended up outside of the car upon getting shot, and no witness suggested Johannes moved toward appellant at any time. Additionally, appellant was the only witness to state that Johannes was reaching into his waistband, perhaps for a weapon. Although Jones-LeBlanc stated that he saw Johannes holding a knife by his side, appellant did not mention seeing a knife, and there is essentially no information regarding what type of knife Johannes may have been holding. Likewise, that appellant fired the weapon only once and that the complainant sustained a single wound does not establish a lack of intent to kill. *See Ayala v. State*, 267 S.W.3d 428, 433 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Marshall v. State*, 210 S.W.3d 618, 620 (Tex. Crim. App. 2006)).

The jury reasonably could have concluded, based on the evidence at trial and reasonable inferences therefrom, that appellant intentionally caused Johannes's death. *See* Tex. Penal Code § 19.03(a)(2); *Payne*, 502 S.W.3d at 833. Accordingly, we overrule appellant's second issue.

We affirm the trial court's judgment.

/s/    Frances Bourliot
       Justice

Panel consists of Chief Justice Frost and Justices Christopher and Bourliot.

Do Not Publish — TEX. R. APP. P. 47.2(b).

11