**Opinion issued March 26, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00291-CR

———————————

**KYLE SAMPLE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 22nd District Court***
**Hays County, Texas**
**Trial Court Case No. CR-17-0854-A**

---

\*     Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Court of Appeals for the Third District of Texas to this Court. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between precedent of that court and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

**MEMORANDUM OPINION**

Kyle Sample appeals his conviction for capital murder. TEX. PENAL CODE § 19.03. In eight issues, he argues that the evidence is insufficient to support his conviction, that the trial court erred in rejecting his plea agreement, that the trial court erred in excluding and admitting various pieces of evidence, and that his sentence violates his constitutional rights. We affirm.

**Background**

In 2017, a Hays County grand jury indicted Sample for capital murder and first-degree murder. Sample entered into a plea agreement with the State. Per the agreement, the State would dismiss the capital murder charge and recommend a sentence of life imprisonment for the murder charge. In exchange, Sample would provide truthful information and testimony against his codefendant, Nichole Moore. The trial court acknowledged the agreement and postponed sentencing until after the resolution of Moore's case.

A few months later, the State requested that the trial court reject Sample's plea bargain. The court held a hearing. The State presented evidence that Sample had been untruthful in his statements to authorities about Moore's case. The court rejected Sample's plea bargain and withdrew his plea. Sample pleaded not guilty to both capital murder and first-degree murder. He proceeded to a jury trial.

During trial, the jury heard testimony that Nichole Moore and her son Dominic Paddy traveled from Three Rivers, Texas to San Marcos, Texas. Two of Paddy's friends, Brianna Cruz and Joanna Pineda, were in the car. On the way, Moore picked up Sample. Sample, Paddy, and Moore decided to rob Ryan Kincaid, a drug dealer who sold marijuana. They planned to meet Kincaid at a laundromat parking lot in San Marcos. They planned that Paddy would get into the passenger seat of Kincaid's car and begin to purchase the marijuana. As the transaction occurred, Sample would walk up to the driver's side window, approach Kincaid with a gun, and demand his drugs and cash. The trio planned to split the proceeds from the robbery. They dropped off Cruz and Pineda at a hotel and proceeded to meet with Kincaid.

The trio drove to a laundromat parking lot in San Marcos to meet Kincaid. As planned, Paddy got into the passenger seat of Kincaid's car, and Sample walked up to the driver's side. When Sample demanded the drugs and money, Kincaid got out of the car and fought back. Sample fired a single shot that killed Kincaid. Paddy got into the driver's seat of Kincaid's car and drove backwards, striking Kincaid as he drove out of the parking lot.

At trial, Cruz and Pineda told the jury what they experienced while in the car when Moore picked up Sample from his house. While in the car, they learned that Sample had a gun, and they heard Sample planning the robbery with Moore and

Paddy. Pineda and Cruz were left in a hotel room before the robbery, and Sample, Moore, and Paddy continued to San Marcos to meet Kincaid.

The jury heard from several eyewitnesses who were either at the laundromat or at a nearby gas station at the time of the shooting. They described seeing individuals that matched Paddy's and Sample's descriptions. They testified to the clothing each man was wearing. They described that Paddy was wearing a plaid shirt and Sample was wearing a bucket hat. The clothing was recovered by the police and shown to the jury. The police also discovered photographs in Sample's phone showing him wearing the bucket hat.

The jury heard from first responders who treated Kincaid in the parking lot and attempted life-saving efforts. A Travis County medical examiner testified that Kincaid died from a gunshot wound to the chest.

The jury also heard from several investigating detectives. One of those detectives collected surveillance video from the laundromat and the gas station. The videos were shown to the jury. They do not capture the shooting itself, but they show Paddy and Sample in the area at the time of the shooting. In the video, Paddy is wearing a plaid shirt and Sample is wearing a bucket hat.

Witnesses from the Texas Department of Public Safety analyzed the firearm and determined it was functioning correctly. The jury heard that it would have taken about five pounds of pressure on the trigger to shoot the weapon.

4

Lakisha Wheeler, Moore's friend, testified that she met up with Moore, Sample, and Paddy after the murder. She described that Sample was not remorseful after the murder and that instead he seemed pleased and proud.

The jury heard from Detective Aubry. After interviewing witnesses on the scene, Detective Aubry found Sample and Paddy at a motel. When found, Sample had two ounces of marijuana in his pocket. The jury watched video of Sample's interview with Detective Aubry. In the video, Sample tells a story that involved a fourth person in the robbery. Sample tells the detective that someone else wore his clothes at the time of the shooting, and that he did not fire the gun. Once Detective Aubry confronts Sample and says that he knows there was not a fourth person involved, Sample admits that he shot Kincaid. The jury also heard that Detective Aubry interviewed Sample a second time, and in that interview, Sample admitted that he shot Kincaid because he was angry that Kincaid fought back.

Finally, Detective Casillas testified. During his testimony, the jury heard recordings of calls Sample made from jail. In one call, he describes the shooting and says that he expected Kincaid would just give him the drugs, but instead Kincaid fought back. Sample said, "I wasn't having that in me at all."

The jury found Sample guilty of both charges and found that he used a deadly weapon during the commission of each offense. After the verdicts, the State abandoned the first-degree murder charge. The trial court sentenced Sample to life

5

imprisonment without the possibility of parole for the capital murder conviction. Sample appealed.

## Sufficiency of the Evidence

In his first issue, Sample claims that there is insufficient evidence to support his capital murder conviction because there is no evidence that the murder was premeditated or that he intended to kill Kincaid. We disagree.

### A. Standard of Review

We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We examine all evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "the standard of review on appeal is the same for both direct and circumstantial evidence cases." *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) (internal quotation and citation removed).

The jury is the sole judge of the weight and credibility of the evidence. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). As the sole judge of credibility, the jury may accept one version of the facts and reject another, and it

may reject any part of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We defer to the jury to resolve any "conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). A reviewing court, faced with a record of historical facts supporting conflicting inferences, must presume the factfinder resolved any such conflicts in favor of the prosecution, and must defer to that resolution. *Jackson*, 443 U.S. at 326.

## B.    Applicable Law

A person commits capital murder if he "intentionally or knowingly causes the death of an individual" and "intentionally commits the murder in the course of committing or attempting to commit . . . robbery." TEX. PENAL CODE §§ 19.02(b)(1) (murder), 19.03(a)(2) (capital murder). A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally, knowingly, or recklessly causes bodily injury to another." *Id.* § 29.02(a). Regarding the offense of theft, the Penal Code specifies that a person commits that offense "if he unlawfully appropriates property with intent to deprive the owner of the property" and the appropriation is unlawful and without the owner's consent. *Id.* § 31.03(a)–(b).

7

## C. Analysis

Sample argues that there is insufficient evidence to prove that the murder was premeditated, and therefore there is insufficient evidence of his intent to kill. We disagree. A jury may infer a defendant's intent from any facts tending to prove its existence, including the method of committing the crime, the nature of the wounds inflicted on the victim, and the accused's acts, words, and conduct. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Fields v. State*, 515 S.W.3d 47, 53 (Tex. App.—San Antonio 2016, no pet.) (same). Generally, a jury may infer an intent to kill from the use of a deadly weapon unless the manner of the weapon's use makes it reasonably apparent that death or serious bodily injury could not have resulted. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). "Naturally, the most obvious cases and the easiest ones in which to prove a specific intent to kill, are those cases in which a firearm was used and was fired or attempted to have been fired at a person." *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986); *Payne v. State*, 502 S.W.3d 829, 833 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Godsey* and stating when deadly weapon used in deadly manner, inference is almost conclusive that appellant intended to kill). Sample brought a loaded gun to the laundromat when he met Kincaid and fired it at Kincaid. *Godsey*, 719 S.W.2d at 581. The jury could reasonably infer that he intended to kill Kincaid.

Additionally, the jury heard evidence that Sample contemplated killing Kincaid prior to the robbery and murder. Pineda testified that she heard Sample, Paddy, and Moore discussing the plan to rob Kincaid. She heard them say that Kincaid had a big business they could take over and make a lot of money. Sample commented that Paddy would be able to "take over" the business if Kincaid was "gone." When Paddy responded that Kincaid was "still around," Sample responded: "Things can happen. Things can change." The group discussed how they would rob Kincaid of his marijuana and cash rather than purchasing marijuana from him.

Sample brought the firearm to the laundromat parking lot where he, Moore, and Paddy decided to rob Kincaid. "Evidence that the defendant arrived at the scene of the crime carrying a loaded weapon is probative of deliberate conduct." *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993). During the robbery, when Kincaid did not immediately comply with Sample's directive to hand over the marijuana, Sample pointed the weapon directly at Kincaid. When Kincaid attempted to knock the gun from Sample's hand, Sample shot him at close range.

Sample later admitted to Detective Aubry that he shot Kincaid. He told the detective that he conspired with Moore and Paddy to rob Kincaid because he was desperate for money. They traveled to San Marcos together, and Kincaid brought

9

his revolver. The plan included that Paddy would get in Kincaid's car and pretend to buy marijuana while Sample approached the car and robbed Kincaid at gunpoint. The three would split the proceeds they obtained from Kincaid.

Witnesses described two people in the laundromat parking lot at the time of the shooting: a man in a white-and-black plaid shirt and a man in a white hat. Surveillance video of the parking lot before the murder also shows two men who fit that description. Sample was arrested with Kincaid's marijuana.

From the evidence presented at trial, the jury could reasonably conclude that Sample planned to rob Kincaid with Moore and Paddy, that he brought a weapon with him to the laundromat parking lot for that purpose, and that he intentionally shot Kincaid. The evidence is sufficient to support the jury's determination that Sample intentionally and knowingly caused the death of Kincaid while committing the robbery, and that, therefore, Sample committed capital murder. TEX. PENAL CODE § 19.03.

We overrule Sample's first issue.

**Capital Murder Sentence**

In his second issue, Sample asserts that sentencing him to life without the possibility of parole was cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. *See* U.S. CONST. amend. VIII; U.S. CONST. amend. XIV. We disagree.

10

Sample argues that he presented evidence that he is intellectually disabled, and therefore he should not be subject to an automatic life sentence without parole. The Court of Criminal Appeals has held that the Eighth Amendment is no bar to automatic life sentences for intellectually disabled individuals convicted of capital murder. *Avalos v. State*, 635 S.W.3d 660, 672 (Tex. Crim. App. 2021). In so holding, the Court reversed the Fourth Court of Appeals's decision that intellectually disabled defendants are less culpable than the average criminal and require an individualized sentencing hearing. *See Avalos v. State*, 616 S.W.3d 207, 210–11 (Tex. App.—San Antonio 2020), *rev'd* 635 S.W.3d 660 (Tex. Crim. App. 2021).

We note that evidence of Sample's intellectual disability is disputed. The court-appointed competency evaluator found that Sample did not have an intellectual-development disorder. During the punishment phase of trial, Sample presented evidence from a neuropsychologist who testified that he had a "concern that [Sample] may be intellectually disabled" and that further examination would be needed to confirm a diagnosis. Even if the trial court credited Sample's evidence of intellectual disability, the trial court was obligated to sentence Sample to life imprisonment without the possibility of parole for his capital murder conviction. TEX. PENAL CODE § 12.31(a)(2) (stating that individual over 18 convicted of capital felony shall be sentenced to life without parole).

We overrule Sample's second issue.

## Plea Agreement

Sample contends that the trial court abused its discretion in rejecting his plea agreement. He argues that the trial court did not hear sufficient evidence that he violated the terms of the agreement. We disagree.

Sample entered into a plea agreement with the State where the State agreed to dismiss the capital murder charge against him in exchange for his truthful testimony against co-defendant Nichole Moore. At the plea hearing, Sample acknowledged that he understood the plea was contingent upon his cooperation and that he would not be sentenced until after he fulfilled the requirements of the agreement. He acknowledged that to obtain the benefit of the agreement, he needed to provide "truthful statements to law enforcement regarding Nichole Marie Moore." Sample was also warned that at sentencing, the court could consider his degree of cooperation, or if he did not cooperate, the court might not accept the offer. The court postponed sentencing until after Moore's case was resolved.

At sentencing, the State presented evidence that Sample had not cooperated because he was not truthful in his proffer with the State. The State presented evidence that it had met with Sample, Sample's attorney, Detective Aubry, and Detective Casillas. During the meeting, Sample's attorney warned Sample that

failure to tell the truth could jeopardize his plea and that his statements could be used against him in court. Sample was administered *Miranda* warnings.

Detective Aubry testified that originally Sample admitted shooting Kincaid and said he did so because he was angry. Detective Aubry testified that later Sample changed his story as to why he shot Kincaid. Sample said he had not planned to rob Kincaid. Instead, he claimed he was meeting Kincaid to exchange cocaine for marijuana. Sample claimed that Kincaid was not satisfied with the amount of cocaine that Sample provided, and that Kincaid swung at him.

The detective testified that this story was implausible, not only due to the disproportionate values of cocaine and marijuana but also because Sample was detained with marijuana and not cocaine. Detective Aubry also testified that Sample told him that Nichole Moore was not involved.

Sample did not present evidence to rebut the conclusion that his proffer story was untruthful. The trial court informed Sample that the State had presented evidence to the effect that his cooperation with them had been inconsistent. The trial court rejected the plea agreement and returned both parties to their original positions, able to negotiate a new plea or proceed to trial.

Once the trial court declares that it will accept a plea agreement, "the State is bound to carry out its side of the bargain. Likewise, the defendant is bound to carry out his side of the bargain." *State v. Moore*, 240 S.W.3d 248, 252 (Tex. Crim. App.

2007) (quoting *Ex parte Williams*, 637 S.W.3d 943, 947 (Tex. Crim. App. 1982)). A trial court may conditionally agree to follow a plea bargain agreement, delaying the acceptance or rejection of the agreement until after the condition of acceptance has been fulfilled. *Moore v. State*, 295 S.W.3d 329, 332–33 (Tex. Crim. App. 2009); *Ortiz v. State*, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996). If, after a conditional acceptance of a plea bargain, the trial court rejects the plea bargain agreement, the court must still allow the defendant the opportunity to withdraw his guilty plea. *Ortiz*, 933 S.W.2d at 104.

Here, the trial court informed Sample that it would postpone sentencing until after he fulfilled the conditions of the plea agreement. At the sentencing hearing, the State presented uncontroverted testimony that Sample did not cooperate as bargained. The trial court did not abuse its discretion in rejecting the plea agreement. *Moore*, 295 S.W.3d at 333. We overrule this issue.

### Proffer Statements

Sample contends that the trial court abused its discretion in admitting statements he made during a proffer meeting with the State. He argues that these statements were inadmissible because they were part of plea negotiations. The State responds that the trial court did not err in admitting the statements because at the time they were made, plea negotiations had concluded. We agree with the State.

14

Texas Rule of Evidence 410(b) provides that statements made during plea discussions with an attorney are inadmissible if the discussion does not result in a guilty or nolo contendere plea or resulted in a later-withdrawn guilty or nolo contendere plea. TEX. R. EVID. 410(b).

Sample's proffer meeting statements were admissible because they were not made during plea negotiations. The plea bargain negotiations had concluded before the statements were given. Sample entered into the plea agreement in August 2018. At the hearing, he acknowledged understanding that the plea was contingent upon providing truthful information to the State regarding his codefendant, Nichole Moore. The court confirmed that Sample was entering the plea bargain intelligently, knowingly, and voluntarily. The court postponed sentencing, allowing Sample to cooperate with the State pursuant to the agreement. The proffer meeting was held in September 2018. Sample's counsel was present. His counsel reminded him that failure to provide truthful information could jeopardize his plea agreement. Sample was informed his statement was recorded and *Miranda* warnings were read.

At trial, Sample moved to exclude all statements he had made to the State after the plea bargain was entered. Specifically, he hoped to exclude statements that he got angry during the robbery and shot Kincaid. The trial court denied the motion, holding that any statement Sample told the State after the plea agreement

15

was not part of plea negotiations. The jury then heard testimony regarding statements Sample made to detectives in the proffer meeting.

The trial court did not abuse its discretion in admitting the evidence. The statements made during the proffer meeting were made following the execution of the plea agreement and the conclusion of negotiations. Sample was not negotiating with the State regarding his plea at the time of the statements. The agreement was complete, and Sample's sentence only remained pending so that he could fulfill his end of the bargain. Although the plea bargain was ultimately withdrawn, Sample's statements to the State were not "made during plea discussions" as contemplated by Rule 410. TEX. R. EVID. 410(b)(4); *see also Abdel-Sater v. State*, 852 S.W.2d 671, 673 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (holding statement made after plea agreement was not part of plea discussions under Rule 410). The trial court did not abuse its discretion in admitting proffer statements.

We overrule Sample's issue related to admission of statements made during the proffer with the State.

## Hearsay and Confrontation Challenges

Next, Sample contends that the court erred in admitting testimony on four occasions over his Confrontation Clause and hearsay objections. We disagree.

16

## A.    Standard of Review

The Sixth Amendment's Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. Under the Confrontation Clause, testimonial statements of a witness who does not appear at trial are prohibited unless the witness is unavailable to testify, and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 52, 59 (2004). When "the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n.9. "The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.* at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)); *see also Guzman v. State*, 591 S.W.3d 713, 724 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (holding that admitting declarant's out-of-court outcry statement through another witness did not violate defendant's rights under Confrontation Clause because "the declarant of the out-of-court outcry statement, testified at trial and was subject to cross-examination by appellant"). Once the defendant raises a Confrontation Clause objection, the burden shifts to the State to prove either (1) that the proposed statement does not contain testimonial hearsay and thus does not implicate the Confrontation Clause or (2) that the statement does contain testimonial hearsay but

17

is nevertheless admissible. *See De La Paz v. State*, 273 S.W.3d 671, 680–81 (Tex. Crim. App. 2008) (citing *Crawford*, 541 U.S. at 68).

We review the trial court's rulings on Confrontation Clause objections to admission of evidence under *Crawford* de novo. *Cook v. State*, 199 S.W.3d 495, 497 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Lilly v. Virginia*, 527 U.S. 116, 136 (1999)) (standard of review for Confrontation Clause objections).

We review a trial court's rulings on the admissibility of hearsay evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) (standard of review for rulings on admissibility of hearsay). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

## Analysis

Sample contends that the trial court erred by admitting evidence over his Confrontation Clause and hearsay objections on four different occasions. We review each instance in turn.

### 1. Location of Suspect

First, Sample argues that the trial court abused its discretion in permitting a police officer to testify about a statement relayed to him by a detective. In

explaining the location where the officer apprehended suspects to the murder, the police officer said:

> Detective Aubrey said on the radio that he had—It was said the subjects were seen in the area of Super 8, which is this building right here.

This statement does not violate the Confrontation Clause because it was not hearsay. Statements that are properly offered and admitted not to prove the truth of the matter, but rather for a non-hearsay purpose, do not implicate Confrontation Clause rights and are admissible under *Crawford*. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010) ("[A]n out-of-court statement, even one that falls within [the] definition of 'testimonial' statements, is not objectionable under the Confrontation Clause to the extent that it is offered for some evidentiary purpose other than the truth of the matter asserted."). As further noted by the court in *Langham*:

> When the relevance of an out-of-court statement derives solely from the fact that it was made, and not from the content of the assertion it contains, there is no constitutional imperative that the accused be permitted to confront the declarant. In this context, the one who bears "witness against" the accused is not the out-of-court declarant but the one who testifies that the statement was made, and it satisfies the Confrontation Clause that the accused is able to confront and cross-examine him.

305 S.W.3d at 576–77. For example, when a statement is "offered to show the reason for the [police officer's] actions," and not for the truth of the matter, it is not hearsay." *Kimball v. State*, 24 S.W.3d 555, 565 (Tex. App.—Waco 2000, no pet.).

19

Moreover, "testimony by an officer that he went to a certain place or performed a certain act in response to generalized 'information received' is normally not considered hearsay because the witness should be allowed to give some explanation of his behavior." *Poindexter v. State*, 153 S.W.3d 402, 408 n.21 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015).

The complained-of statement is not hearsay because it was not offered to prove the truth of the matter asserted. The police officer's statement was not offered to prove that Sample and Paddy were in fact near a Super 8, but rather to explain why the officer responded to that area to apprehend the suspects. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (holding that evidence was not hearsay because State tendered it "to show how appellant became a suspect in the investigation"); *see also Lacaze v. State*, 346 S.W.3d 113, 121 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (stating officer may describe statements made by others for purpose of showing why defendant became suspect and to explain events leading to his arrest). The trial court did not err in overruling Sample's hearsay objection to the testimony.

The testimony also does not offend the Confrontation Clause. Sample's Confrontation Clause challenge is based on his inability to question the detective mentioned by the police officer. Since the challenged testimony was not hearsay,

20

Sample's right to confrontation was not violated. *See McCreary v. State*, 194 S.W.3d 517, 521–22 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (holding that officers testimony showing how appellant became suspect was not hearsay and therefore did not violate Confrontation Clause).

### 2. Statement by Pineda

Sample complains that the trial court erred in admitting co-defendant Nichole Moore's statements into evidence as an adopted admission. Pineda testified about a day's long road trip with Paddy and Moore. Pineda was in middle school at the time, and friends with Paddy's little sister. She was in the car when Moore picked up Sample. During Pineda's testimony, she stated that when they picked up Sample, Moore got out of the driver's seat, and Sample began driving the group. She testified that Moore said that Sample had to drive because he had the revolver. Immediately after describing this conversation, Pineda described that she was scared because her father did not know she would be gone for so long. When she said she wanted to call her father, Sample told her she did not need to be afraid because he had a gun.

The complained-of statement was not hearsay. A statement offered against a party which is "a statement of which the party has manifested an adoption or belief in its truth" is not hearsay. TEX. R. EVID. 801(e)(2)(B). Statements made by others in a defendant's presence may be admissible as adoptive admissions if the

defendant, "by his actions and responses, showed agreement with the statements." *Paredes v. State*, 129 S.W.3d 530, 534 (Tex. Crim. App. 2004). Moore's statement that Sample had a gun was made in Sample's presence, and he immediately confirmed that to Pineda that he had a gun. Sample's response manifested an adoption or belief in the truth of Moore's statement. Therefore, the trial court did not abuse its discretion in admitting the testimony as an adoptive admission. *Id.*

The statement did not implicate the Confrontation Clause because it was non-testimonial. Casual remarks among acquaintances are non-testimonial. *See Crawford*, 541 U.S. at 51. ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."). The challenged statement was made among children and friends, not between Moore and a state agent. *See Ohio v. Clark*, 576 U.S. 237, 249 (2015) ("Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers."). Moore's statement to Pineda that Sample had a gun was not testimonial and therefore did not offend the Constitution.

### 3. Description of Suspects

Sample complains that the trial court erred in admitting testimony by Detective Aubry. During the testimony, Detective Aubry said that he interviewed

two witnesses at the laundromat and relayed the descriptions of the suspects that they gave him. The two witnesses testified to the jury before Detective Aubry's testimony. Detective Aubry testified that one of the witnesses described the suspect as "a white or Hispanic Male, lighter skin, skinny to thin build, approximately five feet seven, brunette . . . . [The witness] also described him having a shirt . . . white with blue or black squares on it." He further testified that another eyewitness described one of the suspects as "tall, super skinny, wearing a white fishing hat with light skin" and the second suspect as wearing a plaid shirt that was open with a normal or average build.

These statements do not violate the Confrontation Clause because both eyewitnesses were available for trial and had previously testified. *Crawford*, 541 U.S. at 59 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."); *Torres v. State*, 424 S.W.3d 245, 259 (Tex. App.—Houston [14th Dist.] pet. denied) (same). The trial court did not err in concluding that the admission of this evidence did not violate the Confrontation Clause.

Presuming for the sake of argument that the trial court erred in overruling Sample's hearsay objections to the same testimony, we must decide whether that error affected his substantial rights to a fair trial. *See* TEX. R. APP. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). A substantial right is

affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble*, 330 S.W.3d at 280. If the improperly admitted evidence did not influence the jury or had but a slight effect, the error is harmless. *Id.* Improper admission of evidence is not reversible error if the same or similar evidence was admitted without objection at another point during trial. *Brooks*, 990 S.W.2d at 287 (holding admission of hearsay evidence was harmless considering other properly admitted evidence proving same fact). Before Detective Aubry testified, the two eyewitnesses each testified without objection to their descriptions of the suspects. The jury also saw surveillance video showing Sample and Paddy in clothing matching the eyewitnesses' descriptions. Due to the cumulative nature of the complained-of testimony, the admission of Detective Aubry's hearsay statements is not reversible error.

### 4. Detective Casillas's testimony

Lastly, Sample complains about the admission of certain parts of Detective Casillas's testimony. During his testimony, Detective Casillas testified about Moore's and Wheeler's statements to law enforcement. Moore was Sample's codefendant, who was in the car at the time of the murder. Wheeler was Moore's friend who saw Sample and Moore after the murder. Detective Casillas testified:

> State:     Did you ask Moore and [Wheeler] for descriptions of the two individuals they had previously identified as persons of interest?

24

Casillas:     Yes. Yes, I did.

State:     Okay. And did these descriptions match those given by the eyewitness?

Casillas:     Yes, they did.

Sample argues that this is indirect hearsay and that it violated the Confrontation Clause. Whether testimony constitutes implied or indirect hearsay depends on how strongly the content of the out-of-court statement can be inferred from the context. *See Head v. State*, 4 S.W.3d 258 261 (Tex. Crim. App. 1999); *Moran v. State*, No. 03-04-00159-CR, 2005 WL 3003731, at \*2 (Tex. App.—Austin Nov. 10, 2005, no pet.) (mem. op., not designated for publication). If the inference is clear, and if there is no other purpose for the testimony than to convey the content of the out-of-court statement, the testimony is hearsay. *Moran*, 2005 WL 3003731, at \*2 (citing *Head*, 4 S.W.3d at 261–62).

Detective Casillas did not testify to the substance of the interviews with Moore or Wheeler. The testimony provided was not offered to prove that Moore's or Wheeler's descriptions were accurate. It was offered to show that the descriptions they provided matched the descriptions given by other witnesses. "[T]he testimony did not reveal to the jury the substance of the out-of-court statements, but rather only conveyed that the facts themselves were uniform." *Head*, 4 S.W.3d at 262–63. The trial court did not abuse its discretion in admitting the testimony.

25

As to the Confrontation Clause objection, Detective Casillas's descriptions of Wheeler's statements do not implicate the Confrontation Clause because Wheeler testified at trial. Even if Detective Casillas's testimony as to Moore's statement was erroneously admitted in violation of the Confrontation Clause, the error would be harmless. TEX. R. APP. P. 44.2(a). The issue at trial was not identity but rather intent. Evidence of what Sample and Paddy were wearing that night did not address the contested issue of Sample's intent to kill Kincaid. If the admission of the statement violated the Confrontation Clause, this Court is satisfied beyond a reasonable doubt that it did not contribute to the conviction or punishment. *See id.*

We overrule Sample's hearsay and Confrontation Clause issues.

### Mental Health Evidence

In his sixth and seventh points of error, Sample argues that the trial court abused its discretion in excluding evidence of his mental health. He claims the evidence was relevant to his state of mind and its redaction violated the rule of optional completeness. We disagree.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Fields v. State*, 507 S.W.3d 333, 336 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). We will not reverse the trial court's ruling unless it falls outside of the

zone of reasonable disagreement. *Zuiliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

**B.    Analysis**

Sample complains of two pieces of evidence. First, the court admitted State's Exhibit 45, which is a video of Sample's statement to medical personnel. The State redacted the video before publishing it the jury to omit Sample's assertions that he suffered from mental health conditions. The unredacted video is not part of the record, though Sample's trial counsel characterized the excluded evidence as his client listing his medical problems, including schizophrenia, bipolar disorder, and attention-deficit hyperactivity disorder. Trial counsel also told the court that the deleted footage shows Sample saying that he needed to speak with his mother because his brain was "not functioning."

Sample also complains about redactions to State's Exhibit 60, which is a video of his interactions with Detective Aubry. The unredacted version shows Sample asserting to police, then again while speaking to himself in an empty interrogation room, and finally when speaking to medical personnel, that he suffers from various mental health conditions and has not been taking his proper medication.

Although Texas does not recognize "diminished capacity" as an affirmative defense, a defendant can attempt to use diminished capacity to negate the *mens rea*

element of a crime. *Ruffin v. State*, 270 S.W.3d 586, 594 (Tex. Crim. App. 2008). Sample argues that the excluded evidence regarding his mental health conditions "go directly to his *mens rea* at the time of the offense." Capital murder requires that the defendant act intentionally or knowingly. TEX. PENAL CODE § 19.03. A defendant's diminished capacity prevents him from acting "intentionally or knowingly" when, "as a result of severe mental disease or defect, [he] did not know that his conduct was wrong." *Id.* § 8.01 (defining insanity defense). If the evidence does not directly negate the required *mens rea* by showing that the defendant could not have acted intentionally or knowingly, then it may be excluded as irrelevant. *See Mays v. State*, 318 S.W.3d 368, 381–82 (Tex. Crim. App. 2010) (holding that mental-illness evidenced explained why defendant intentionally and knowingly killed law enforcement and may be excluded at guilt stage but relevant for mitigation in punishment). To preserve error when a trial court sustains a relevancy objection, the offering party must inform the court of the evidence's substance by an offer of proof, unless the substance was apparent from the context." TEX. R. EVID. 103(a)(2).

Both physical and mental disease or defects may affect a person's perception of the world in a manner that could negate *mens rea*. *Ruffin*, 270 S.W.3d at 593–594. In *Ruffin*, the defendant shot at approaching police offers. He sought to offer mental health evidence showing that due to his delusional state, he had a mistaken

28

perception regarding whom he was shooting. *Id.* at 594. The court held that the evidence was relevant to *mens rea* because it proved that he did not intend to shoot at police officers specifically. *Id.* at 594; *see also* TEX. PENAL CODE § 22.02(b)(2)(B) (enhancing punishment for aggravated assault if assailant intentionally attacked public servant in discharge of duties). The court emphasized, however, that Ruffin was still guilty of aggravated assault because he intended to shoot at a person but did not appreciate that the person was a police officer. *Ruffin*, 270 S.W.3d at 594.

Sample's alleged statements about his own mental health do not negate *mens rea* in the same way. Sample failed to link the existence of his mental health conditions to negating *mens rea*. Sample presented no evidence and made no argument explaining how the existence of mental-health conditions impacted the specific *mens rea* necessary to commit capital murder. *See Iniquez v. State*, 374 S.W.3d 611, 619 (Tex. App.—Austin 2012, no pet.) (upholding exclusion of psychologist's testimony of possible mental health disorder because evidence did not negate *mens rea*). He likewise offers no explanation on appeal. The complained-of excluded evidence was irrelevant to Sample's ability to form the necessary *mens rea* for capital murder, or alternatively was of such limited probative value that its relevance was substantially outweighed by its potential to mislead the jury. *See id.* (holding same); *Fields*, 507 S.W.3d at 337 (holding

29

evidence of unsupported speculation that defendant's ex-wife said he had dementia insufficient to negate *mens rea* and thus not relevant).

The trial court also did not err in preventing Sample from offering the excluded sections of the video into evidence under the Rule of Optional Completeness. Rule 107 "is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party." *Walters v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007). "It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing." *Id.* Rule 107 provides that if a part of some evidence is introduced, any other part may be introduced so long as it is on the same subject or necessary to fully understand or explain the topic. TEX. R. EVID. 107.

The trial court did not abuse its discretion in excluding the complained-of evidence. The redacted mental health references in the two exhibits did not explain or correct false impressions from the admitted portions of the videos. Sample did not posit what different conclusion the jury might draw from viewing the complete tape, nor did he identify any reason the jury might reach a false impression without viewing the full tape. To the contrary, admitting the excluded portions likely would have "created confusion, rather than helping to dispel it." *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004) (emphasis removed) (upholding trial

court's exclusion of evidence under Rule 107). The record does not demonstrate that the unredacted videos were necessary to explain the testimony the State offered or to enable the jury to gain a full understanding of it. *See* TEX. R. EVID. 107; *Sauceda*, 129 S.W.3d at 123–24.

The trial court did not abuse its discretion in overruling Sample's evidentiary challenges regarding mental health evidence in the two videos. We overrule this issue.

**Extraneous Offense Evidence**

Sample contends that the trial court erred in admitting testimony that he pressured Paddy to commit a separate robbery at a gas station immediately prior to the murder. He asserts that the evidence had no probative value and was inadmissible under Texas Rules of Evidence 404 and 403.

**A.    Standard of Review**

Extraneous offense evidence is not admissible to prove that a defendant committed the charged offense in conformity with his bad character. TEX. R. EVID. 404(b). This evidence may be admissible when it has relevance apart from character conformity. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). "For example, it may be admissible to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Even if the evidence is relevant apart from its character conformity, it may still

be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *see* TEX. R. EVID. 403.

A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard. *Devoe*, 354 S.W.3d at 469. If the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *Id.* A trial court's ruling admitting 404(b) evidence is generally within the zone of reasonable disagreement if there is evidence supporting that an extraneous offense is not relevant to a defendant's character trait. *Id.*

## B.    Analysis

The trial court admitted testimony from Pineda that while she was in the car with Paddy, Moore, and Sample, Sample instructed Paddy to rob someone at a gas station. The group stopped at a gas station in Beeville hours before the murder. Sample pressured Paddy and told him he needed to rob a patron at the gas station. Paddy did not want to, and ultimately the targeted patron drove away.

The evidence is relevant to Sample's intent. To prove that Sample was guilty of capital murder, the State had to prove that he intentionally caused the death of another person while committing robbery. The evidence is probative to show Sample's intent to commit capital murder as well as his preparation. The jury could

infer that Sample was testing Paddy to see if he was a reliable co-conspirator for the robbery that they planned to execute just a few hours later. *See Devoe*, 354 S.W.3d at 469 (extraneous offense evidence admissible to prove intent).

The trial court may still exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. Turning to the question of whether the probative value of the testimony concerning the attempted robbery was substantially outweighed by the danger of unfair prejudice, we note that appellate courts should afford deference to a trial court's Rule 403 balancing determination and should reverse a trial court "rarely and only after a clear abuse of discretion." *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990) (op. on reh'g) (citation omitted). The evidence was relevant to proving Sample's intent to commit capital murder. The State used a minimal amount of time to develop the evidence, and it was a small percent of the State's case-in-chief. Intent was a contested issue, and the extraneous offense testimony was probative of Sample's intent to commit the robbery turned murder. Under these circumstances, the probative value of the evidence outweighs any unfair prejudicial effect. TEX. R. EVID. 403. The trial court did not abuse its discretion in admitting the testimony.

## Conclusion

We affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).